**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CARTER WARE** and **THELMA WARE**, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **INDYMAC BANK, FSB, HOMESTART** ) <br> **MORTGAGE CORPORATION, CITIMORTGAGE,** ) <br> **INC., MORTGAGE ELECTRONIC** ) <br> **REGISTRATION SYSTEMS, INC.,** and **DOES** ) <br> **1-5,** ) <br> ) <br> Defendants. ) <br> ) | No. 07 C 1982 |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Carter and Thelma Ware filed a seven-count amended complaint against defendants Homestart Mortgage Corporation ("Homestart"), Indymac Bank, F.S.B. ("Indymac"), CitiMortgage, Inc. ("CitiMortgage"), and Mortgage Electronic Registration Systems, Inc. ("MERS") alleging: (1) violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3605, against Homestart and Indymac on behalf of two classes; (2) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, against Homestart and Indymac on behalf of two classes; (3) violation of the Illinois Consumer Fraud Act and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2, against Homestart and Indymac on behalf of two classes; (4) violation of the ICFA against Homestart and Indymac; (5) violation of the Truth in Lending Act ("TILA") against Indymac, CitiMortgage, and MERS seeking rescission under 15 U.S.C. § 1635 and 12 C.F.R. § 226.23 and statutory damages; (6) violation of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679b, against Homestart;

and (7) breach of fiduciary duty against Homestart. Pursuant to Fed. R. Civ. P. 12(b)(6), Homestart moves to dismiss Counts I-IV, VI, and VII; Indymac moves to dismiss Counts I through V; and CitiMortgage and MERS move to dismiss Count V. For the following reasons, Homestart's motion is granted in part and denied in part; Indymac's motion is granted in part and denied in part; CitiMortgage's motion is granted in part and denied in part; and MERS' motion is denied. Accordingly, Count III against Homestart and Indymac is dismissed in its entirety; the portion of Count V for rescission against Indymac and CitiMortgage based on the inadequacy of the Notice of Right to Cancel is dismissed; and the portion of Count V for statutory damages against CitiMortgage based on the inadequacy of the Notice of Right to Cancel is dismissed.

I.

The amended complaint alleges the following facts. Plaintiffs are African-American husband and wife who entered into two loans for $280,000.00 and $49,000.00 in November 2005. Homestart, through its employee Jerri Benefield ("Benefield"), acted as the mortgage broker for the November 2005 loans. Previously, plaintiffs had refinanced with Homestart in March 2004 and had obtained a loan through Homestart on or about March 25, 2005. MERS holds title to the mortgages that resulted from the November 2005 loans. Indymac and CitiMortgage own plaintiffs' loans. Plaintiffs continue to make payments to Indymac on the larger loan. Plaintiffs were directed to make payments to CitiMortgage on the smaller loan.

Benefield contacted Mr. Ware in October 2005 and solicited him for a refinance mortgage loan. During the application process for a no documentation loan, Benefield orally requested from plaintiffs, and plaintiffs orally provided to her, information concerning their employment, income, assets, home, and other pertinent matters. The closing took place at plaintiffs' home over the course of two days - November 1 and 2, 2005. At the closing, Homestart brokered two loans through Indymac. Plaintiffs were not informed that they were being given two loans, one of which would have a prepayment penalty and the other of which would have a balloon payment. Benefield rushed plaintiffs through the closing and failed to explain the loan documents or terms. Plaintiffs were not provided with copies of the TILA financial disclosures or notices of right to cancel at the time of the closing. Rather, copies of the loan documents were sent to them by mail following the closing.

Plaintiffs paid Homestart broker fees in connection with the November 2005 loans. In addition, Indymac paid Homestart a yield spread premium ("YSP"). A YSP is a payment by a lender to a broker based on the extent to which the interest rate on the loan exceeds a base or "par" rate. The lender's payment of a YSP to the broker, and the broker's imposition of a higher interest rate, are unrelated to the borrower's creditworthiness. Plaintiffs allege that YSPs disproportionately impact minority borrowers, which is known and intended by defendants.

Plaintiffs allege that Benefield and/or Homestart

3

intentionally falsified information regarding their employment, income, and assets on the loan applications for both the March 2005 and the November 2005 loans in order to make it appear as though they qualified for a bigger loan, thereby increasing the amounts of Benefield's and Homestart's commission and fees. Plaintiffs further allege they were unaware of the alleged falsification of information until after they contacted their current counsel. Specifically, plaintiffs allege that, in connection with the March 2005 loan, Mrs. Ware's monthly income and the purchase price of their home were overstated on the loan application. Plaintiffs further allege that, in connection with the November 2005 loans, plaintiffs' combined income was overstated on the loan application. Plaintiffs allege that they were induced to sign loan documents providing for a loan that was unnecessarily expensive, and that was made on less favorable terms than loans to Caucasian individuals. Plaintiffs also allege that defendants' falsification of plaintiffs' financial and asset information has made it difficult to refinance to escape the unfavorable terms.

## II.

FED. R. CIV. P. 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has interpreted this language to require that: (1) the complaint describes the claim in sufficient detail to give the defendant

4

notice of what the claim is and the grounds therefor; and (2) the allegations plausibly suggest the plaintiff has a right to relief above a speculative level. *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

### III.
#### A. Count I

On behalf of the putative classes, plaintiffs allege Homestart and Indymac violated § 3605 of the FHA, which makes it unlawful for any person or entity "whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color . . . . " 42 U.S.C. § 3605. The term "residential real estate-related transaction" is defined to include "[t]he making or purchasing of loans or providing of other financial assistance--(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate." *Id.* Plaintiffs allege Homestart and Indymac violated the FHA by receiving and paying, respectively, "higher [YSPs] with respect to loans made to minority borrowers, which necessarily impacts the rates charged to such borrowers." Plaintiffs also allege that YSPs disproportionately impact minority borrowers, which is known and intended by defendants. Plaintiffs further allege that they were induced to sign loan documents for a loan that was unnecessarily

5

expensive and made on less favorable terms than loans brokered with or made to non-minority individuals.

Homestart argues that plaintiffs fail to "demonstrate" that minority borrowers received loans on unfavorable terms while non-minority borrowers obtained loans on better terms. Homestart also argues that plaintiffs fail to show how the YSP was discriminatorily applied. Homestart further argues that plaintiffs have not pled facts linking the payment of the YSP to discrimination. Similarly, Indymac argues that plaintiffs assert bare legal conclusions without any supporting facts. At this stage, plaintiffs are not required to support their facts with evidence. Here, taking the facts alleged in the amended complaint as true, plaintiffs have a right to relief that is more than speculative because they have alleged sufficient facts to suggest the possibility that Homestart and Indymac discriminated against minority borrowers. Therefore, Homestart's and Indymac's motions to dismiss Count I are denied.

B. Count II

On behalf of the putative classes, plaintiffs allege Homestart and Indymac "violated the ECOA." Section 1691 of the ECOA makes it unlawful for a creditor "to discriminate against any applicant with respect to any aspect of a credit transaction . . . on the basis of race, color . . . . " 15 U.S.C. § 1691.

Homestart and Indymac argue that the ECOA claim should be dismissed for the same reasons as the FHA claim. Homestart also argues that, under § 1691e(i), plaintiffs cannot seek redress under

the ECOA and the FHA. In addition, Indymac argues that plaintiff admits they received a higher loan amount, thus belying any claim of discrimination. Indymac also argues that it should not be subjected to costly discovery.

Plaintiffs' ECOA claim survives dismissal for the same reasons as the FHA claim. With regard to Homestart's argument that plaintiffs cannot maintain both FHA and ECOA claims, § 1691e(i) merely states that "[n]o person . . . shall recover" under both statutes where the violation of the ECOA is based on the same transaction as the FHA violation. *See* 15 U.S.C. § 1691e(i). Further, Indymac's argument that there was no discrimination because plaintiffs received a bigger loan disregards plaintiffs' theory of discrimination, which is that they received a bigger loan, thereby increasing plaintiffs' costs as well as the amount of the YSP. The alleged discrimination in this case is not based on the denial of a loan, but rather on the making of an unnecessarily costly loan. Homestart's and Indymac's motions to dismiss Count II are denied.

B. Count III

On behalf of the putative classes, plaintiffs allege Homestart and Indymac violated section 505/2 of the ICFA by "engaging in the discriminatory conduct that gives rise to the [FHA] and ECOA violations." Plaintiffs further allege Homestart and Indymac "engaged in such conduct" in the course of trade and commerce, with the intent to injure plaintiffs, plaintiffs were damaged as a result, and Homestart's and Indymac's conduct caused plaintiffs'

7

injuries.

Homestart and Indymac argue, and plaintiffs concede,[1] that the ICFA claim is precluded under the ECOA. Section 1691d(e) provides

> [w]here the same act or omission constitutes a violation of this subchapter and of applicable State law, a person aggrieved by such conduct may bring a legal action to recover monetary damages either under this subchapter or under such State law, but not both . . . .

15 U.S.C. § 1691d(e). Because plaintiffs have chosen to pursue an ECOA claim, they cannot also pursue an ICFA claim. *See Tribett v. BNC Mortgage,* Inc., No. 07 C 2809, 2008 WL 162755, at *3 (N.D. Ill. Jan. 17, 2008) (Kendall, J.) (dismissing class action claim under ICFA where plaintiffs chose to pursue FHA and ECOA claims).

---

[1] Plaintiffs concede that the ICFA claim is barred by § 1691d(e). (Pls.' Resp. at 21.) Yet plaintiffs nevertheless contend that where a plaintiff does not elect between federal and state remedies before bringing the complaint the case should not be dismissed; rather recovery should be restricted to the federal statute. (*Id.*) Plaintiffs cite *Saldana v. Citibank, Fed. Sav. Bank*, No. 93 C 4164, 1996 U.S. Dist. LEXIS 8327 (N.D. Ill. June 13, 1996), and *Milton v. Bancplus Mortgage Corp.*, No. 96 C 106, 1996 U.S. Dist. LEXIS 5166 (N.D. Ill. Apr. 19, 1996), both of which are irrelevant because they allowed for the dismissal of claims under the Illinois Fairness in Lending Act pursuant to that statute's requirement to choose between it or any other act. Plaintiffs also cite *Fernandez v. Hull Cooperative Bank*, No. 79-509-G, 1979 U.S. Dist. LEXIS 8657 (D. Mass. Nov. 8, 1979), in which a default judgment was entered for the plaintiff due to the defendant's failure to answer or otherwise defend against claims under the ECOA and a state statute. The court denied the defendant's motion for relief from judgment. Then, upon sending the case to the magistrate judge to determine the issue of damages, the court explained that § 1691d(e) requires actions to be brought either under the ECOA or state law, but that plaintiff's failure to elect remedies did not warrant dismissal; rather, for the purpose of assessing damages, the selection of federal or state law would need to be made.

8

Accordingly, Homestart's and Indymac's motions to dismiss Count III are granted.

### D. Count IV

Individually, plaintiffs allege Homestart and Indymac violated § 505/2 of the ICFA "by (a) falsely inflating plaintiffs' financial and asset information on their loan application and (b) having plaintiffs sign an application containing false information and putting them at risk for prosecution." Plaintiffs allege Homestart and Indymac engaged in such conduct in the course of trade and commerce, with the intent to injure plaintiffs, plaintiffs were damaged as a result, and Homestart's and Indymac's conduct caused plaintiffs' injuries. Plaintiffs also allege Indymac knew about the inflated income and asset information or ratified it later; and, on information and belief, shortly before or after the November 2005 transactions, Indymac conducted its own internal review of plaintiffs' application materials submitted by Homestart.

Homestart argues that the ICFA claim fails because the March 2005 and November 2005 loan applications attached to the complaint each include an acknowledgment and agreement, signed by Mrs. Ware, stating that the information provided is true and correct and that the applicant is obligated to amend the information if any material facts change prior to closing. Indymac argues that the ICFA claim fails because plaintiffs do not allege that it participated in any fraud or misrepresentation or that it committed a deceptive act or practice. Alternatively, like Homestart, Indymac argues that the loan applications attached to the complaint doom the claim.

9

First, the signed loan applications attached to the complaint do not require the dismissal of the ICFA count. Plaintiffs allege that they were unaware that the information was false when the documents were signed. Plaintiffs did not attach these documents to show their truth, but rather to show that they are false as a result of defendants' alleged deceptive acts. *See Navara v. Long Beach Mortgage*, No. 05 C 865, 2006 U.S. Dist. LEXIS 4908, at *12-16 (N.D. Ill. Jan. 26, 2006) (Filip, J.) (finding allegations in complaint did not dictate that attached document necessarily defeated plaintiff's claim where plaintiff alleged it was product of misrepresentation and concealment, and document reflected fraud). Thus, Homestart's and Indymac's motions to dismiss Count IV are denied on this ground.

Second, Indymac's argument that there are no allegations that it engaged in any violation of the ICFA also fails. Indymac argues that, as an assignee, it is not liable under the ICFA unless it participated in the alleged fraud. As an initial matter, according to the allegations in the complaint, and the documents attached thereto, Indymac was the original lender for both of the November 2005 loans. As such, it does not appear that Indymac is an assignee, and Indymac has not explained how that would be the case. Indymac also argues that there are no allegations that it committed a deceptive act or practice, and that knowing receipt of the benefits of another's deceptive act or practice does not state a claim under the ICFA, citing *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill. 2d 359, 695 N.E.2d 853 (Ill. 1998). In *Zekman*, the

Illinois Supreme Court upheld the dismissal of an ICFA claim because no cause of action exists for knowingly receiving the benefits of another's fraud. 182 Ill. 2d at 371-72, 695 N.E.2d at 860. But the court separately considered as a matter for summary judgment an amended version of the ICFA claim, which had stated a claim by alleging a direct violation where the defendant reviewed, revised, and approved another actor's deceptive acts or practices. *Id.* at 372-76, 695 N.E.2d at 860-62.

Here, plaintiffs allege a direct violation of the ICFA. Plaintiffs allege that Homestart brokered the November 2005 loans through Indymac, and that Indymac knew about, or subsequently ratified, the inflated income and asset information. Specifically, plaintiffs allege, on information and belief, that Indymac conducted an internal review of the application materials it received from Homestart. Thus, plaintiffs allege that Indymac, directly violated the ICFA by reviewing the application materials. Therefore, Indymac's motion to dismiss Count IV is also denied on this ground.

### E. Count V

Individually, plaintiffs allege the right to rescind against Indymac, CitiMortgage, and MERS. Plaintiffs also seek statutory damages. Plaintiffs allege Indymac failed to provide the required disclosures of the right to cancel within three days in violation of 15 U.S.C. § 1635 and 12 C.F.R. § 226.23. Plaintiffs also allege Indymac failed to provide the required financial disclosures in violation of 15 U.S.C. § 1637 and 12 C.F.R. § 226.18.

11

Plaintiffs further allege that when a TILA Disclosure Statement was provided, it failed to properly disclose the payment schedule in violation of 15 U.S.C. §§ 1602(u) and 1638(a)(6) and 12 C.F.R. § 226.18(g). Plaintiffs allege that notice of rescission was given, and the loan has not been rescinded. Plaintiffs also allege that, under 15 U.S.C. § 1641(c), the right to rescind may be exercised against an assignee, including CitiMortgage.

First, Indymac and CitiMortgage argue that the Notices of Right to Cancel were properly and timely disclosed. Under TILA, a debtor has a right to rescind within three days of the consummation of the transaction or the delivery of the required information and rescission forms together with a statement containing the required material disclosures, whichever occurs later. 15 U.S.C. § 1635(a). A creditor "shall deliver" to the consumer two copies of the notice of the right to rescind, which must clearly and conspicuously disclose certain information, including the right to rescind. 12 C.F.R. § 226.23(b)(1). To satisfy these disclosure requirements, "the creditor shall provide the appropriate model form in Appendix H . . . or a substantially similar notice." 12 C.F.R. § 226.23(b)(2). Failure to provide the required information, disclosures, and forms extends the rescission period to three years after the consummation of the transaction or the sale of the property, whichever occurs first. 15 U.S.C. § 1635(f).

The sufficiency of TILA disclosures is determined from the ordinary consumer's point of view. *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (reversing judgment for defendant

12

mortgagee because providing two different notices of right to rescind failed to clearly and conspicuously disclose right to rescind). Whether a disclosure is clear for purposes of TILA is a question of law that depends on the form's contents, not on how it affects any particular reader. *Id.*; *Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007). Indymac and CitiMortgage cite the First Circuit's decision in *Palmer v. Champion Mortgage*, which is directly on point.[2] 465 F.3d 24 (1st Cir. 2006) (affirming dismissal of complaint). In *Palmer*, the plaintiff executed at closing a promissory note, mortgage, TILA statement, and settlement sheet. *Id.* at 25. Several days later, the plaintiff received by mail copies of the closing documents, including a notice of right to cancel. *Id.* at 26. The notice of right to cancel stated that the plaintiff had a right to cancel the transaction within three business days from whichever of the following events occurred last: (1) the date of the transaction, which was March 28, 2003; or (2) the date the Truth-in-Lending disclosures were received; or (3) the date the notice of right to cancel was received. *Id.* The notice of right to cancel indicated that to cancel by mail, the plaintiff needed to send the notice no later than midnight of April 1, 2003 or midnight of the third business day following the latest of the

---

[2]In *Hamm*, the court noted that the Seventh Circuit approach to TILA cases is that "hypertechnicality reigns[,]" although that is not the formulation used by all circuits, including the First Circuit. 506 F.3d at 529. Here, the question of whether the notices of right to cancel were proper based on when they were delivered to plaintiffs, as opposed to their content, does not turn on a hypertechnicality.

13

three foregoing events. *Id.* The plaintiff alleged that the documents arrived sometime in early April 2003, but after April 1. *Id.* The plaintiff further alleged that the inclusion of the April 1 deadline, which had already passed by the time she received the notice of right to cancel, was confusing and, therefore, the rescission period was extended to three years. *Id.* The court concluded that, based on the plain language of the notice of right to cancel and its adherence to the model form, the plaintiff's subjective state of mind was irrelevant, and the notice of right to rescind was adequate as a matter of law. *Id.* at 28-29.

Here, the same result is appropriate. As in *Palmer*, the Notices of Right to Cancel track the model form.[3] Also as in *Palmer*, plaintiffs acknowledge that they received copies of the financial disclosures and Notices of Right to Cancel by mail sometime after November 4 or 5. Plaintiffs argue that the forms did not clearly and conspicuously disclose the final date by which to cancel because the date filled in on the form, November 4, already had passed. This argument is foreclosed by the Notices of Right to Cancel, which state that plaintiffs had the right to cancel within three business days from whichever of the following occurred last: (1) the date of the transaction, which is November 1, 2005; or (2) the date the Truth-in-Lending disclosures were

---

[3]The only substantive difference between the Notices of Right to Cancel and the model forms is that the Notices of Right to Cancel contain an additional section for the consumer to acknowledge receipt thereof. Mrs. Ware signed the receipt for the larger loan, and Mr. Ware signed the receipt for the smaller loan; both are dated November 1, 2005.

14

received; or (3) the date the notice of right to cancel was received. (*See* Am. Compl., Exs. E and K.) The Notices of Right to Cancel also expressly stated that, to cancel by mail or telegram, plaintiffs needed to send the notice no later than midnight of November 4 or the third business day following the latest of the three foregoing events. (*See id.*) Because this information was sufficient, Indymac's and CitiMortgage's motions to dismiss are granted as to the portion of Count V alleging the right to rescind based on inadequate Notices of Right to Cancel.

Second, Indymac and CitiMortgage also argue that the TILA Disclosure Statements adequately disclosed the payment schedules. In *Hamm*, the Seventh Circuit found TILA Disclosure Statements that did not explicitly state the payment period of the loans did not comply with TILA. 506 F.3d at 529-30 (affirming summary judgment against lender in one case and reversing summary judgment for lender in other case). "TILA requires a lender to state clearly on the Disclosure Statement either the due dates or period of payments scheduled." *Id.* at 529. TILA's requirements are not satisfied "if the form provides only enough information from which the consumer might infer either the due dates or the payment period." *Id.* Here, as in *Hamm*, the Disclosure Statements do not explicitly indicate the payment periods. Thus, Indymac's and CitiMortgage's motions to dismiss are denied as to the portion of Count V alleging the right to rescind based on inadequate TILA Disclosure Statements.

Third, CitiMortgage argues that, as an assignee, it is not liable for statutory damages. An assignee is not liable for

15

statutory damages based on the underlying TILA violation unless it is apparent on the face of the disclosure statement. 15 U.S.C. §1641(a); *see Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 691-92 (7th Cir. 1998) (affirming dismissal as to assignees from whom plaintiffs sought damages because TILA precludes liability unless violation apparent on face of disclosure statement or other assigned documents). Here, CitiMortgage is not liable for statutory damages in connection with the Notice of Right to Cancel because, as discussed above, there was no TILA violation; and, even if there had been, plaintiffs did not allege a violation that was apparent on the face of the right to cancel. CitiMortgage is liable for statutory damages, however, in connection with the TILA Disclosure Statement because, as discussed above, it did not adequately disclose the payment periods, which is apparent on its face.

Likewise, an assignee is not liable for statutory damages for failure to rescind where the underlying basis for rescission is a disclosure violation not apparent on the face of the disclosure statement. *Bills v. BNC Mortgage, Inc.*, 502 F.Supp.2d 773, 776-77 (N.D. Ill. 2007) (Gettleman, J.) (granting summary judgment for defendant assignee that did not rescind mortgage after receiving notice of cancellation). But, by granting CitiMortgage's motion to establish alternate procedures for recission, I deferred further action on plaintiffs' rescission notice pending the resolution of the TILA claim. Thus, CitiMortgage did not fail to rescind, and statutory damages on that basis are not warranted. Therefore,

CitiMortgage's motion to dismiss is granted as to the portions of Count V seeking statutory damages based on the inadequacy of the Notice of Right to Cancel and the failure to rescind, and denied as to the portion of Count V seeking statutory damages based on the inadequacy of the TILA Disclosure Statement.

Finally, MERS argues that it is not a proper defendant for a TILA claim because it is neither a creditor nor an assignee. Plaintiffs allege that MERS holds title to their mortgages, and "is a party necessary to be joined if feasible." Pursuant to Fed. R. Civ. P. 19(a), a person subject to service of process whose joinder will not deprive the court of subject matter jurisdiction shall be joined if (1) complete relief cannot otherwise be accorded among the existing parties; or (2) that person claims an interest relating to the subject of the action and disposition of the action without that person may (i) impair or impede the person's ability to protect that interest or (ii) leave any of the existing parties subject to a substantial risk of incurring double, multiple, or inconsistent obligations. *See* Fed. R. Civ. P. 19(a). The mortgages attached to the amended complaint state that MERS holds only legal title, but that, as the lender's nominee, it has the right to exercise its interest, including the right to foreclose or sell the property, and to take any action required of the lender, including to release and cancel the security instrument. MERS does not dispute that it is a necessary party, nor that it has the ability to exercise these rights. The exercise of any such rights would impact the instant proceeding, and any decision I make in this

17

proceeding will impact MERS' rights. *See Newman v. Apex Fin. Gr., Inc.*, No. 07 C 4475, 2008 U.S. Dist. Lexis 2249, at *18 (N.D. Ill. Jan. 11, 2008) (Der-Yeghiayan, J.) (denying MERS' motion to dismiss TILA claim because it was properly joined as necessary party). Also, plaintiffs can only obtain complete relief by including MERS as a defendant. *See id.* At this stage, I find MERS is properly joined as a defendant. Therefore, MERS' motion to dismiss Count V is denied.

## F. Count VI

Individually, plaintiffs direct this count against Homestart. Plaintiffs allege that "FMT" violated the CROA, 15 U.S.C. § 1679b, by filling out plaintiffs' loan applications to overstate income and assets. Section 1679b prohibits any "person" from making any untrue or misleading statement, or advising a consumer to make any such statement, with respect to a consumer's creditworthiness, credit standing, or credit capacity to any person to whom the consumer has applied, or is applying, for an extension of credit. *See* 15 U.S.C. § 1679b(a)(1).

Homestart argues that it is not a credit repair organization, and therefore not subject to the CROA. The plain language of the CROA, however, simply prohibits any person from engaging in the proscribed activities. *See id.*; *Martinez v. Freedom Mortgage Team, Inc.*, No. 07 C 3442, 2007 U.S. Dist. Lexis 93151, at *24-25 (N.D. Ill. Dec. 19, 2007) (Shadur, J.) (denying motion to dismiss CROA claim); *Pena v. Freedom Mortgage Team, Inc.*, No. 07 C 552, 2007 U.S. Dist. LEXIS 79817, at *14-15 (N.D. Ill. Oct. 24, 2007)

(Guzman, J.) (same). Homestart also argues that there are no allegations as to how Homestart violated the CROA, but rather only allegations about FMT. Homestart is correct. But Count VI specifically states that the CROA claim is against Homestart, and there are allegations elsewhere in the amended complaint that Homestart inflated the income and asset information on plaintiffs' loan applications. It appears, based on the foregoing case citations, that FMT is a typographical error inadvertently referring to a defendant in other cases also brought by plaintiffs' counsel. Homestart's motion to dismiss Count VI is denied.

## G. Count VII

Individually, plaintiffs allege Homestart undertook to serve as plaintiffs' mortgage broker and engaged in conduct that was fraudulent and adverse to plaintiffs' interest. Specifically, plaintiffs allege Homestart violated its fiduciary duty by flipping or refinancing plaintiffs three times in eighteen months, each time charging exorbitant fees and imposing high rates in exchange for payments from lenders; conspiring in and not disclosing to plaintiffs the inflated appraisal; falsifying plaintiffs' financial, asset, and employment information on loan applications; and having plaintiffs sign a loan application containing false information and putting them at risk of prosecution. Plaintiffs further allege they were damaged as a result. Plaintiffs also allege Homestart's conduct was deliberately oppressive, corrupt, and dishonest.

Homestart argues that all terms and information were disclosed

to plaintiffs because they signed documents containing this information, which are attached to the amended complaint. Plaintiffs allege, however, that they were unaware that the information was false when the documents were signed. This argument fails for the same reasons as set forth above with respect to Count IV. Therefore, Homestart's motion to dismiss Count VII is denied.

IV.

For the foregoing reasons, Homestart's motion to dismiss is granted in part and denied in part; Indymac's motion to dismiss is granted in part and denied in part; CitiMortgage's motion to dismiss is granted in part and denied in part; and MERS' motion to dismiss is denied. Accordingly, Count III against Homestart and Indymac is dismissed in its entirety; the portion of Count V seeking to rescind against Indymac and CitiMortgage based on the inadequacy of the Notice of Right to Cancel is dismissed; and the portion of Count V seeking statutory damages against CitiMortgage based on the Notice of Right to Cancel is dismissed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February 14, 2008